T.C. Memo. 1997-545


UNITED STATES TAX COURT


FRENCH E. HICKMAN AND JANICE C. HICKMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3689-96.                    Filed December 11, 1997.


<u>Dee A. Replogle, Jr.</u>, and <u>Jennifer Henderson Callahan</u>, for
petitioners.[1]

<u>Edith F. Moates</u>, for respondent.

---

[1] <u>James H. Rice</u> (Mr. Rice) represented petitioners at the trial
in this case. Thereafter, but before the briefs in this case
were filed, <u>Dee A. Replogle, Jr.</u>, and <u>Jennifer Henderson Callahan</u>
entered appearances on behalf of petitioners, and the Court
granted Mr. Rice's motion to withdraw as their counsel.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined the following defi-ciencies in, and accuracy-related penalties on, petitioners' Federal income tax:

| Year | Deficiency | Section 6662(a)[2] Accuracy-Related Penalty |
|------|-----------|--------------------------------------------|
| 1991 | $46,801 | $9,360 |
| 1992 | 104,743 | 20,949 |
| 1993 | 37,149 | 7,430 |

The issues remaining for decision are:

(1)  Does $268,027.48 of interest paid by petitioners during 1991 to the F.E. Hickman, DDS Orthodontics, Inc., Profit-Sharing Plan (Hickman corporation profit-sharing plan) qualify as invest-ment interest within the meaning of section 163(d) for which petitioners are entitled for the years at issue to deductions under section 163(a), as limited by section 163(d)?  We hold that it does.

(2)  Are petitioners liable for each of the years at issue for the accuracy-related penalty under section 6662(a)?  We hold that they are to the extent stated herein.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner French E.

---

[2]  Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Hickman[3] and petitioner Janice C. Hickman, who divorced sometime after the years at issue, lived in Oklahoma City and Edmond, Oklahoma, respectively. Petitioners timely filed a joint Federal income tax return (return) for each of the years 1991, 1992, and 1993.

During the years at issue, petitioner, an orthodontist, was the sole shareholder of F.E. Hickman, DDS Orthodontics, Inc. (Hickman corporation). During those years, petitioner, who also owned substantial interests in banks in and around the Oklahoma City area, was (1) the director and the chairman of the board of directors of Midwest National Bank (Midwest Bank), (2) a director of The National Bank of Harrah (National Bank of Harrah), Harrah National Bancshares, Inc. (Harrah Bancshares), and Midwest National Bancshares, Inc. (Midwest Bancshares), and (3) the director and chairman of the board of directors of Nichols Hills Bank and Trust. As such, petitioner was aware of the financial and business circumstances of those organizations.

The Hickman corporation maintained the F.E. Hickman, DDS, Orthodontics, Inc., Retirement Plan and the Hickman corporation profit-sharing plan until they were terminated on December 31, 1991, and January 31, 1992, respectively.

---

[3] Hereinafter, references to petitioner in the singular are to petitioner French E. Hickman.

On June 4, 1982, petitioner borrowed $130,000 from the Hickman corporation profit-sharing plan (1982 plan loan). That loan, which was unsecured, was evidenced by a note payable to that plan and signed by petitioner (1982 note). The 1982 note provided that interest on the 1982 plan loan was to be paid annually at the rate of 15 percent per year, but it did not specify a repayment date for that loan.

On January 4, 1984, petitioner purchased 20,000 shares of stock of National Bank of Harrah at $12 a share. During 1984, petitioner sold 200 shares of that stock. In July 1984, the National Bank of Harrah stock was converted to common stock (Harrah Bancshares stock) in Harrah Bancshares, a holding company. At the time of conversion, petitioner owned 19,800 shares of Harrah Bancshares stock, or 20.43 percent of its outstanding stock. From July 1984 through about April 6, 1993, petitioner held varying amounts of Harrah Bancshares stock.

In an attempt to repay the 1982 plan loan, on August 19, 1985, petitioner transferred to the Hickman corporation profit-sharing plan 5,000 shares of Harrah Bancshares stock (Harrah Bancshares profit-sharing plan stock) and certain real property located in Oklahoma County, Oklahoma (Hickman real property). (Those transfers of 5,000 shares of Harrah Bancshares stock and the Hickman real property shall be referred to collectively as the 1985 stock and real property transfer.)

During 1991, the Hickman corporation profit-sharing plan was audited (1991 audit) by the Internal Revenue Service (IRS). As a result of that audit, the IRS made the following determinations: (1) The 1982 plan loan was a prohibited transaction under section 4975(c)(1)(B) (1982 plan loan prohibited transaction); and (2) the 1985 stock and real property transfer was a prohibited transaction under section 4975(c)(1)(A) (1985 stock and real property transfer prohibited transaction).

Harold D. Hines (Mr. Hines), an authorized representative of petitioners and the Hickman corporation profit-sharing plan, sent respondent's Appeals Officer who was handling the 1991 audit a letter dated October 18, 1991, which set forth the final resolution of that audit (1991 settlement). The 1991 settlement provided, inter alia, that petitioner was to correct

> the alleged prohibitive [sic] transactions [the 1982 plan loan prohibited transaction and the 1985 stock and real property transfer prohibited transaction] through repayment of the outstanding loan balance, principal plus interest, and a conveyance of the real property and stock in the Harrah National Bancshares, Inc. from the Profit Sharing Plan to The French Hickman Trust (this Trust is a revocable trust established by F.E. Hickman for estate tax purposes).

Attached to the 1991 settlement was, inter alia, petitioner's check dated October 4, 1991, payable to the Hickman corporation profit-sharing plan in the amount of $398,027.48, representing payment of the $130,000 principal balance of the 1982 plan loan (1991 principal payment) and interest of

$268,027.48 (1991 interest payment). The 1991 interest payment was calculated based on 15-percent simple interest and 9-percent interest compounded annually on the 15-percent simple interest. The 1991 settlement indicated that other documentation was enclosed therewith, including (1) a copy of a quitclaim deed dated October 17, 1991, whereby the Hickman corporation profit-sharing plan transferred the Hickman real property to The French Hickman Trust (Hickman revocable trust), (2) a copy of an assign-ment by the Hickman corporation profit-sharing plan to the Hickman revocable trust of the Harrah Bancshares profit-sharing plan stock, (3) Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, that was executed by petitioner on October 18, 1991, and (4) petitioner's check to cover the excise tax under section 4975(a) that, pursuant to that Form 870, was to be imposed on petitioner as part of the 1991 settlement.

At the end of 1991, National Bank of Harrah and Harrah Bancshares had a combined net operating loss carryforward of $1,236,093. At the end of 1992, National Bank of Harrah was an operating bank. On April 6, 1993, Harrah Bancshares, which owned approximately 96 percent of the stock of National Bank of Harrah, merged with Midwest Bancshares, and the common stock of Harrah Bancshares was canceled. On April 16, 1993, National Bank of Harrah merged with and into Midwest Bank, each share of Midwest

Bank's common stock remained as one share of common stock of the resulting national bank, and each share of National Bank of Harrah's common stock was exchanged for one-seventh of a share of Midwest Bancshares common stock.

In their returns for 1991, 1992, and 1993, petitioners claimed total investment interest expenses of $330,581, $221,697, and $149,034, respectively. Of those total amounts, petitioners reported in the Forms 4952 (Investment Interest Expense Deduction), which they included with their returns for 1991, 1992, and 1993, respectively, that (1) $323,088 was "Investment interest expense paid or accrued in 1991", and $7,493 was "Disallowed investment interest expense from 1990 Form 4952, line 23"; (2) $47,824 was "Investment interest expense paid or accrued in 1992", and $173,873 was "Disallowed investment interest expense from 1991 Form 4952, line 5"; and (3) $49,445 was "Investment interest expense paid or accrued in 1993", and $99,589 was "Disallowed investment interest expense from 1992 Form 4952, line 5". Included in the $323,088 of investment interest expense which petitioners claimed in their 1991 Form 4952 they paid or accrued during 1991 was the 1991 interest payment of $268,027.48 that petitioner made as part of the 1991 settlement to correct the 1982 plan loan prohibited transaction.

Because of limitations prescribed by section 163(d)(1) on the deductible amount of investment interest, petitioners de-

ducted in their respective returns for 1991, 1992, and 1993 only a portion of the total amounts of investment interest claimed in their respective Forms 4952 for those years. Pursuant to section 163(d)(2), they treated the balance of the total amount of investment interest claimed in Forms 4952 for each of the years 1991 and 1992 as disallowed investment interest to be carried over to the succeeding taxable year.

In Schedules A, Itemized Deductions (Schedule A), of their returns for 1991, 1992, and 1993, petitioners claimed total interest deductions of $179,235, $141,388, and $96,901, respectively. Those deductions consisted of the following claimed amounts of interest for the taxable years indicated:

| Taxable Year | Claimed Home Mortgage Interest and Points | Claimed Investment Interest |
|---|---|---|
| 1991 | $22,527 | $156,708 |
| 1992 | 19,280 | 122,108 |
| 1993 | 15,744 | 81,157 |

In Schedule D, Capital Gains and Losses (Schedule D), of their 1992 return, petitioners claimed a net long-term capital loss of $194,118. Included in the computation of that loss was a claimed long-term capital loss of $289,316 (claimed 1992 worthless stock loss) that petitioners explained in a statement attached to their 1992 return as follows: "The National Bank of Harrah Common Stock was evaluated in June, 1992 and determined to be worthless in accordance with Internal Revenue Code Section

165(g)(1).  The bank was in a failing condition and has since been merged into another bank."  Because of the $3,000 limitation imposed by section 1211(b) for each taxable year on the amount of net capital loss by which an individual may reduce income, petitioners reduced the income reported in their 1992 return by $3,000 of the claimed 1992 worthless stock loss reported in their 1992 Schedule D.  Petitioners carried over the remainder of that claimed loss to their 1993 Schedule D and reduced the income reported in their 1993 return by $3,000 of that claimed loss carryover.

Respondent issued a notice of deficiency (notice) to petitioners for the years at issue.  Respondent determined in the notice, inter alia, that for 1991, 1992, and 1993 petitioners are not entitled to $96,737, $81,165, and $31,712, respectively, of the interest deductions that they claimed in Schedules A of their returns for those years.  The following explanation was set forth in the notice for the disallowance of those claimed interest deductions:

> It is determined that your deduction for investment interest expenses is limited to your net investment income.  It is determined that your deduction for home mortgage interest excess [sic] the $100,000 limit.

Respondent determined in the notice that for 1992 petitioners had a net long-term capital gain of $98,198, rather than a net long-term capital loss of $194,118, and that petitioners had no capital loss carryover to 1993.  Consequently, respondent

disallowed petitioners' 1992 and 1993 deductions relating to their claimed 1992 worthless stock loss.

Respondent also determined in the notice that petitioners are liable under section 6662(a) for each of the years at issue on the entire amount of the underpayment that respondent determined for each of those years (1) because of their negligence or intentional disregard of rules or regulations under section 6662(b)(1) and (2) alternatively because of their substantial understatement of income tax under section 6662(b)(2).

## OPINION

Petitioners have the burden of proving that respondent's determinations in the notice are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent has the burden of proving any new matter that was not raised in the notice. Rule 142(a); Achiro v. Commissioner, 77 T.C. 881, 890 (1981).

## 1991 Interest Payment

Section 163(a) generally permits a deduction for all interest paid or accrued within the taxable year on indebtedness. In the case of a taxpayer other than a corporation, the amount allowed as a deduction for investment interest for any taxable year is not to exceed the net investment income of the taxpayer for that year. Sec. 163(d)(1). Except for certain interest not involved here, the term "investment interest" means any interest

allowable as a deduction, determined without regard to section 163(d)(1), that is paid or accrued on indebtedness properly allocable to property held for investment.  Sec. 163(d)(3)(A).

In general, interest expense on a debt is allocated in the same manner as the debt to which such interest expense relates is allocated.  Debt is allocated by tracing disbursements of the debt proceeds to specific expenditures.  Sec. 1.163-8T(a)(3), Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987). Interest expense allocated to an investment expenditure is treated for purposes of section 163(d) as investment interest. Sec. 1.163-8T(a)(4)(i)(C), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987).  The term "investment expenditure" means an expenditure (other than a passive activity expenditure) properly chargeable to capital account with respect to property held for investment within the meaning of section 163(d)(5)(A) or an expenditure in connection with the holding of such property. Sec. 1.163-8T(b)(3), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987).  Section 163(d)(5)(A) provides that in general the term "property held for investment" includes any property which produces income of a type described in section 469(e)(1) (i.e., gross income from interest, dividends, annu- ities, or royalties not derived in the ordinary course of a trade or business and gain or loss not derived in the ordinary course of a trade or business that is attributable to the disposition of

property producing income of a type just described or held for investment) and any interest held by a taxpayer in an activity involving the conduct of a trade or business which is not a passive activity and with respect to which the taxpayer does not materially participate.

Debt is allocated to expenditures in accordance with the use of the debt proceeds, and, with certain exceptions not pertinent here, interest expense accruing on a debt during any period is allocated to expenditures in the same manner as the debt is allocated from time to time during such period. Sec. 1.163-8T(c)(1), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987). Debt is allocated to an expenditure for the period beginning on the date on which the proceeds for the debt are used or treated as used under the rules of section 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987), to make the expenditure and ending on the earlier of the date on which the debt is repaid or the date on which the debt is reallocated in accordance with, inter alia, section 1.163-8T(c)(4) and (j), Temporary Income Tax Regs., 52 Fed. Reg. 25001, 25004 (July 2, 1987). Sec. 1.163-8T(c)(2)(i), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987). Generally, debt allocated to an expenditure properly chargeable to capital account with respect to an asset (first expenditure) is reallocated to another expenditure on the earlier of the date on which proceeds from a

disposition of such asset are used for another expenditure or the date on which the character of the first expenditure changes by reason of a change in the use of the asset with respect to which the first expenditure was capitalized. Sec. 1.163-8T(j)(1)(i), Temporary Income Tax Regs., 52 Fed. Reg. 25004 (July 2, 1987).

Petitioners contend that the 1991 interest payment of $268,027.48 is investment interest within the meaning of section 163(d)(3) that is deductible under section 163(a) subject to the limitations of section 163(d). Respondent contends that the 1991 interest payment is not investment interest because petitioner repaid the 1982 plan loan during 1985 when he made the 1985 stock and real property transfer. Respondent further contends that, assuming arguendo that the Court were to find that the 1982 plan loan was not repaid during 1985, petitioners have failed to show that the 1991 interest payment constitutes investment interest because they failed to establish that the $130,000 of proceeds from that loan are traceable to an investment expenditure from June 4, 1982, the date on which the 1982 plan loan was made, through October 4, 1991, the date on which petitioner made the 1991 principal payment and the 1991 interest payment. In the alternative, respondent contends that, even if the Court were to find that the 1991 interest payment constitutes investment interest, either section 72(e) or section 72(p)(3) prohibits the deduction of that interest.

With respect to respondent's contention that the 1991 interest payment is not investment interest because the 1985 stock and real property transfer constituted repayment of the 1982 plan loan, the parties to the 1991 settlement (viz., respondent, the Hickman corporation profit-sharing plan, and petitioners) agreed in that settlement that the 1982 plan loan had an "outstanding loan balance" and that that loan, which the IRS determined was a prohibited transaction, was to be corrected "through repayment of the outstanding loan balance, principal plus interest".  On the record before us, we shall not allow respondent to abandon the agreement reflected in the 1991 settlement that there was an outstanding loan balance during 1991 with respect to the 1982 plan loan and that the principal of that loan, plus interest, was paid by petitioner on October 4, 1991. Consequently, we reject respondent's argument that the 1985 stock and real property transfer constituted repayment of the 1982 plan loan.

We now address respondent's contention that, assuming arguendo that the Court were to determine that the 1982 plan loan was not repaid during 1985 by the 1985 stock and real property transfer, the 1991 interest payment is not investment interest because petitioners have failed to show that the $130,000 of proceeds from that loan are traceable to an investment expenditure from June 4, 1982, when the 1982 plan loan was made, through

October 4, 1991, when petitioner made the 1991 principal payment and the 1991 interest payment.  Petitioners counter that respondent stipulated at trial that those proceeds were invested, and therefore are traceable to an investment expenditure, throughout that period.  We agree with petitioners.

During the direct examination of petitioners' accountant, David B. Harbison (Mr. Harbison), by petitioners' counsel, Mr. Rice, the following exchanges took place:

BY MR. RICE:

Q    Mr. Harbison, it has been previously testified while you were out of the courtroom that in June 1982 Dr. Hickman [petitioner] borrowed $130,000 from a retirement plan.

A    That is correct.

Q    That -- several years later, during a year at issue, he repaid it with interest.  Could you tell us, as succinctly as possible, referring to that document, the manner in which the proceeds of this loan were invested and held during the intervening years?

A    Certainly.  I will try.

    MS. MOATES:  Excuse me, Your Honor.  The Respondent is willing to stipulate, and has expressed a willingness to stipulate, that the $130,000 that was borrowed from the pension plan in 1982 was, in fact, invested.

    MR. RICE:  Thank you.

    THE COURT:  What more do you need?

    MR. RICE:  We need nothing more.  [Emphasis added.]

In her closing statement after the trial in this case, respondent's counsel stated the position of respondent regarding the investment interest issue presented here, as follows:

> The issue as to the interest paid -- there has been stipulation that the interest paid to correct the prohibited transaction in excess of $268,000 -- it was paid in 1991.
>
> The facts are rather clear. I believe that it is the Petitioner's argument -- I don't believe there is any discussion about the facts -- that it is Peti-tioner's legal argument that Code Section 72(p)(3) simply does not apply to the repayment of interest in 1991.
>
> That is a legal issue that the Respondent will be happy to argue, but the facts on that issue are set forth and clear. [Emphasis added.]

We construe the stipulation of respondent's counsel during Mr. Harbison's direct testimony and her closing statement with respect to the investment interest issue to mean that respondent does not dispute (1) that the proceeds of the 1982 plan loan were invested from June 4, 1982, when that loan was made, through October 4, 1991, when petitioner made the 1991 principal payment and the 1991 interest payment, and (2) that, consequently, the 1982 plan loan proceeds are traceable to an investment expenditure throughout that period. On the record before us, we shall not allow respondent to abandon on brief the position taken at trial that the $130,000 proceeds of the 1982 plan loan were "invested" and that the facts regarding the investment interest issue are "clear". Consequently, we reject respondent's argument

that petitioners have failed to establish that the 1982 plan loan proceeds were invested throughout the period June 4, 1982, through October 4, 1991.

Based on our examination of the entire record before us, we find that the 1991 interest payment constitutes investment interest within the meaning of section 163(d).

We now turn to respondent's alternative contention that in the event the Court were to determine that the 1991 interest payment constitutes investment interest, which we have, either section 72(e) or section 72(p)(3) bars petitioners from taking a deduction for that interest. The following explanation was set forth in the notice for respondent's determination to disallow certain investment interest expenses claimed by petitioners in their returns for the years at issue: "It is determined that your deduction for investment interest expenses is limited to your net investment income."

The Court ordered seriatim briefs in this case, and respondent raised for the first time in the answering brief to petitioners' opening brief that section 72(e) precludes the interest deductions at issue because the Hickman corporation profit-sharing plan is a plan described in section 72(e)(7).[4] We con

---

[4] Sec. 72(e)(7) applies to any trust or contract

    (i) which is described in clause (i) or subclause (I), (II), or (III) of clause (ii) of paragraph (5)(D), and

                              (continued...)

clude that respondent raised the position under section 72(e) so late as to prejudice petitioners.  Consequently, we shall not allow respondent to advance that position in this case.[5]

For the first time in the trial memorandum, respondent contended that section 72(p)(3)[6] disallows the interest deduc

---

[4](...continued)
   (ii) with respect to which 85 percent or more of the total contributions during a representative period are derived from employee contributions.  [Sec. 72(e)(7)(B).]

[5]  Assuming arguendo that we were to have allowed respondent to advance the position under sec. 72(e), that position would be a new matter requiring the presentation of different evidence which was not raised in the notice and on which respondent would have the burden of proof.  See Rule 142(a); Seagate Tech., Inc., & Consol. Subs. v. Commissioner, 102 T.C. 149, 169 (1994); Achiro v. Commissioner, 77 T.C. 881, 890 (1981).  On the record before us, we find that if the Court were to have permitted respondent to advance the position under sec. 72(e), respondent has failed to establish that the Hickman corporation profit-sharing plan is a plan described in sec. 72(e)(7) and that sec. 72(e) precludes the interest deductions at issue.

[6]  Sec. 72(p)(3) provides:

   (A)  In General.--No deduction otherwise allowable under this chapter shall be allowed under this chapter for any interest paid or accrued on any loan described in subparagraph (B).

   (B)  Loans to Which Subparagraph (A) Applies.-- For purposes of subparagraph (A), a loan is described in this subparagraph--

      (i)  if paragraph (1) does not apply to such loan by reason of paragraph (2), and

      (ii) if--

         (I)  such loan is made to a key employee (as defined in section 416(i)), or

                                                    (continued...)

tions at issue.  Petitioners did not claim at trial that they were surprised by respondent's position under section 72(p)(3). To the contrary, petitioners' counsel, Mr. Rice, made reference to respondent's argument under section 72(p)(3) in his closing statement after trial.  Although petitioners were not surprised at trial by respondent's position under section 72(p)(3), that position nonetheless constitutes a new matter requiring the presentation of different evidence which was not raised in the notice and on which respondent has the burden of proof.  See Rule 142(a); Seagate Tech., Inc., & Consol. Subs. v. Commissioner, 102 T.C. 149, 169 (1994); Achiro v. Commissioner, 77 T.C. at 890.

The Tax Reform Act of 1986 (1986 Act), Pub. L. 99-514, sec. 1134(c), 100 Stat. 2484, amended the Code to add a new section 72(p)(3), effective for loans made, renewed, renegotiated, modified, or extended after December 31, 1986, 1986 Act, sec. 1134(e), 100 Stat. 2484 (1986 Act effective date provisions). Respondent contends that the 1982 plan loan was modified in 1991 by the 1991 settlement and that, consequently, the 1982 plan loan falls within the 1986 effective date of section 72(p)(3).  In support of that contention, respondent asserts:

> When the plan was examined in 1991, the settlement
> agreement called for the terms of the original [1982]

---

6(...continued)
      (II) such loan is secured by amounts attributable
    to elective 401(k) or 403(b) deferrals (as defined in
    section 402(g)(3)).

note to be altered to correct prohibited transactions. The modification of the original note is evidenced by the amount of interest that was paid to correct the prohibited transactions. Interest on the original note was "at the rate of 15 percent per annum, payable annually." * * * Interest paid in connection with the correction of the prohibited transactions was "interest at fifteen percent (15%) simple and nine percent (9%) compounded annually on the fifteen percent (15%) simple interest." * * * The modification of the loan to correct the prohibited transaction requires the application of I.R.C. § 72(p)(3) to determine the nature of the interest paid during 1991. The interest is simply not deductible pursuant to I.R.C. § 72(p)(3).

On the record before us, we find that respondent has failed to establish that the 1991 settlement modified the 1982 plan loan within the meaning of the 1986 Act effective date provisions. The 1982 note provided that interest on the 1982 plan loan was to be paid annually at the rate of 15 percent per year, and the 1991 settlement provided for "repayment of the outstanding [1982 plan] loan balance, principal plus interest," consisting of 15-percent simple interest and 9-percent interest compounded annually on the 15-percent simple interest. However, the provision in the 1991 settlement for 9-percent compound interest did not modify the terms of the 1982 plan loan or the 1982 note evidencing that loan; it merely effected the correction of the "prohibited" 1982 plan loan, which the parties to the 1991 settlement agreed was required by section 4975(f)(5), by

undoing the transaction [the 1982 plan loan] to the extent possible, but in any case placing the [Hickman corporation profit-sharing] plan in a financial position not worse than that in which it would be if the

disqualified person [petitioner] were acting under the highest fiduciary standards. [Sec. 4975(f)(5).]

Even assuming arguendo that we were to have found that the 1982 plan loan was modified within the meaning of the 1986 Act effective date provisions, with the result that that loan may be subjected to section 72(p)(3), on the instant record, we find that section 72(p)(3) does not apply to that loan. Section 72(p)(3) applies to a loan that is not subject to section 72(p)(1) because it satisfies the exception in section 72(p)(2).[7]

---

[7] Sec. 72(p)(1) provides that if during any taxable year a participant or beneficiary receives any amount as a loan from a qualified employer plan, that amount is to be treated as having been received by such individual as a distribution under such plan.

Sec. 72(p)(2) provides the following exception to sec. 72(p)(1):

(A) General Rule.--Paragraph (1) shall not apply to any loan to the extent that such loan (when added to the out-standing balance of all other loans from such plan whether made on, before, or after August 13, 1982), does not exceed the lesser of--

(i) $50,000, reduced by the excess (if any) of--

(I) the highest outstanding balance of loans from the plan during the 1-year period ending on the day before the date on which such loan was made, over

(II) the outstanding balance of loans from the plan on the date on which such loan was made, or

(ii) the greater of (I) one-half of the present value of the nonforfeitable accrued benefit of the employee under the plan, or (II) $10,000.

(continued...)

In general, a loan fits within the exception in section 72(p)(2)
if it (1) is in an amount not exceeding a prescribed ceiling that
in no event may be more than $50,000, (2) is required by its
terms to be repaid within five years, and (3) requires substan-
tially level amortization, with payments made at least quarterly.

---

[7](...continued)

> For purposes of clause (ii), the present value of the
> nonforfeitable accrued benefit shall be determined
> without regard to any accumulated deductible employee
> contributions (as defined in subsection (o)(5))(B)).
>
> (B)  Requirement That Loan Be Repayable Within 5 Years.--
>
>     (i)  In General.--Subparagraph (A) shall not apply
> to any loan unless such loan, by its terms, is re-
> quired to be repaid within 5 years.
>
>     (ii) Exception for Home Loans.--Clause (i) shall
> not apply to any loan used to acquire any dwelling
> unit which within a reasonable time is to be used
> (determined at the time the loan is made) as the prin-
> cipal residence of the participant.
>
> (C)  Requirement of Level Amortization.--Except as pro-
> vided in regulations, this paragraph shall not apply to any
> loan unless substantially level amortization of such loan
> (with payments not less frequently than quarterly) is
> required over the term of the loan.

        *    *    *    *    *    *    *

    The Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA),
Pub. L. 97-248, sec. 236(a), 96 Stat. 509-510, amended the Code
to add sec. 72(p)(1) and (2), effective for loans, assignments,
and pledges made after Aug. 13, 1982, TEFRA, sec. 236(c), 96
Stat. 510-511 (TEFRA effective date provisions).  In applying the
TEFRA effective date provisions governing sec. 72(p)(1) and (2),
the outstanding balance of any loan which is renegotiated,
extended, renewed, or revised after Aug. 13, 1982, is to be
treated as an amount received as a loan on the date of such
renegotiation, extension, renewal, or revision.  TEFRA, sec.
236(c), 96 Stat. 510-511.

The terms of the 1982 note evidencing the 1982 plan loan provide no specific repayment date for the $130,000 of principal and require interest to be paid annually at the rate of 15 percent per year.  Accordingly, the 1982 plan loan is not a loan described in section 72(p)(2).  On the instant record, we reject respondent's argument that section 72(p)(3) disallows the interest deductions at issue relating to the 1991 interest payment on the 1982 plan loan.

Based on our examination of the entire record presented to us, we reject respondent's determinations and find that petitioners are entitled for the years at issue to interest deductions under section 163(a), as limited by section 163(d), that are attributable to the 1991 interest payment on the 1982 plan loan.

Section 6662(a)

Section 6662(a) imposes an addition to tax equal to 20 percent of the underpayment of tax attributable to, inter alia, negligence or disregard of rules or regulations under section 6662(b)(1).[8]  For purposes of section 6662(a), the term "negli

---

[8]  Respondent made alternative determinations in the notice that, assuming arguendo that the Court were not to find petitioners liable for the years at issue under sec. 6662(a) because of their negligence or disregard of rules or regulations under sec. 6662(b)(1), they are liable under sec. 6662(a) for those years because of substantial understatements of income tax under sec. 6662(b)(2).  On brief, respondent does not advance any arguments in support of the alternative determinations under sec. 6662(a) that were based on sec. 6662(b)(2).  We conclude that respondent has abandoned the determinations under sec. 6662(a) that were

(continued...)

gence" includes any failure to make a reasonable attempt to comply with the Code, and "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence has also been defined as a lack of due care or failure to do what a reasonable person would do under the circumstances.  Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Neely v. Commissioner, 85 T.C. 934, 947 (1985).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability and the knowledge and experience of the taxpayer.  Sec. 1.6664-4(b)(1), Income Tax Regs.

The parties address on brief, and we shall consider, respondent's determinations under section 6662(a) for the years at issue only insofar as they relate to the underpayment of tax

---

[8](...continued)
premised upon substantial understatements of income tax within the meaning of sec. 6662(b)(2).

(1) for each of the years at issue that is attributable to the claimed investment interest deduction relating to the 1991 interest payment and (2) for each of the years 1992 and 1993 that is attributable to the claimed deduction relating to their claimed 1992 worthless stock loss.

With respect to the investment interest deductions for 1991, 1992, and 1993 that are attributable to the 1991 interest payment on the 1982 plan loan, we have rejected respondent's determinations disallowing those deductions. Consequently, there are no underpayments of income tax for those years that are attributable to those deductions on which the accuracy-related penalties under section 6662(a) may be imposed.

With respect to the 1992 and 1993 deductions relating to petitioners' claimed 1992 worthless stock loss, petitioners conceded at trial they are not entitled to those deductions. However, they contend that they are not liable for 1992 and 1993 for the accuracy-related penalties under section 6662(a) that are attributable to those deductions because they acted reasonably in claiming them. Respondent disagrees. On the record before us, we reject petitioners' contention.

During 1991, 1992, and 1993, petitioner, an orthodontist and the sole shareholder of the Hickman corporation, was (1) the director and the chairman of the board of directors of Midwest Bank, (2) a director of National Bank of Harrah, Harrah

Bancshares, and Midwest Bancshares, and (3) the director and chairman of the board of directors of Nichols Hills Bank and Trust.  As such, he was aware of the financial and business circumstances of those organizations.

To support their position that they acted reasonably in claiming the 1992 and 1993 deductions relating to their claimed 1992 worthless stock loss, petitioners point to the following: (1) The parties' stipulations (a) that at the end of 1991 National Bank of Harrah and Harrah Bancshares had a combined net operating loss carryforward of $1,236,093 and (b) that petitioner's Harrah Bancshares stock was canceled on April 6, 1993, when Harrah Bancshares merged with Midwest Bancshares, and (2) petitioner's testimony that "Harrah had become insolvent".  Petitioners presented no documentary or other evidence corroborating petitioner's testimony that "Harrah had become insolvent" or clarifying the date on which petitioners claim "Harrah had become insolvent".  In addition, petitioners disregard petitioner's testimony that National Bank of Harrah was an operating bank at the end of 1992.

Based on our examination of the entire record before us, we find that petitioners have failed to show that they acted with reasonable cause and in good faith, or that they otherwise exercised due care or made a reasonable attempt to comply with the Code, when they claimed the 1992 and 1993 deductions relating

to their claimed 1992 worthless stock loss.  Accordingly, we sustain respondent's determinations imposing the accuracy-related penalties under section 6662(a) for 1992 and 1993 to the extent that they are attributable to those deductions.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered under Rule 155</u>.